School District of Philadelphia, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

School District of Philadelphia, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued September 12, 1984, before Judges ROGERS, BARRY and BARBIERI, sitting as a panel of three.

*Robert H. Nuttall,* Assistant Counsel, with him, *Eugene F. Brazil,* General Counsel, for petitioner.

*Richard F. Faux,* Associate Counsel, with him, *Charles Hasson,* Deputy Chief Counsel, and *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

*James J. Binns, James J. Binns, P.A.,* with him, *Deborah R. Willig,* for intervenor, Philadelphia Federation of Teachers.

OPINION BY JUDGE ROGERS, October 23, 1984:

We have consolidated two appeals by the School District of Philadelphia (school district) from orders of the Unemployment Compensation Board of Review affirming a referee's determination that Ruth B. Taggart and Rosita B. Johnson, individually and as representative claimants for 3,498 school district professional and nonprofessional employees were entitled to unemployment compensation for the weeks ending July 4, 1981 through October 27, 1981.

The claimants were members of the Philadelphia Federation of Teachers (PFT). In September, 1980, the Board of Education of the City of Philadelphia (board) and PFT entered into what seemed to be a collective bargaining agreement extending over two years; that is, for the academic year September 1, 1980 through August 31, 1981 and September 1, 1981 through August 31, 1982. The agreement contained a commitment by the school district that it would not lay off any PFT members for reasons other than declining pupil enrollment.

In May, 1981, it became apparent that the 1981-1982 school budget would not be fully funded by the district's principal source of money, the City of Phila-

delphia. The Educational Supplement to the Philadelphia Home Rule Charter, 351 Pa. Code §12.12-303(a), requires the school district to operate within a balanced budget. In order to comply with this stricture, the board adopted a greatly reduced budget and on June 24, 1981, sent claimants the termination notices which we reproduce later in this discussion.

PFT thereafter filed suit in the Court of Common Pleas of Philadelphia County seeking specific performance of the collective bargaining agreement during the 1981-1982 academic year. On September 4, 1981, the court denied PFT any relief, holding that the contract was enforceable only to the extent that funding was available. *Philadelphia Federation of Teachers v. Board of Education of the School District of Philadelphia* (No. 4369 May Term, 1981, filed September 4, 1981). The PFT appealed and on October 27, 1981, this Court affirmed the decree of the common pleas court. We held that the school district and the PFT had not entered into an agreement extending in all events over two years but that they had agreed in essence with respect to two separate periods, the first, for the academic year September 1, 1980 through August 31, 1981, and the second, for the academic year September 1, 1981 through August 31, 1982; and that the duty of the school district to perform during each period was dependent upon the receipt of money to meet the budget. We concluded that since sufficient money for the 1981-1982 academic year was not provided by the city, the school district was not bound to comply with its commitments during the second academic year. *Philadelphia Federation of Teachers v. Thomas,* 62 Pa. Commonwealth Ct. 286, 436 A.2d 1228 (1981). We wrote that "no agreement for 1981-1982 could have even come into effect." *Id.* at 300, 436 A.2d at 1223.

Reverting now to the history of this litigation, the notices sent to the claimants by the board on June 24, 1981, were as follows:

DEAR ROSITA B. JOHNSON

I DEEPLY REGRET TO NOTIFY YOU THAT YOU ARE SUSPENDED WITHOUT PAY FROM EMPLOYMENT WITH THE SCHOOL DISTRICT OF PHILADELPHIA AS OF SEPTEMBER 1, 1981. THIS SUSPENSION IS DUE TO THE CURTAILMENT AND/OR ALTERATION OF THE EDUCATIONAL PROGRAM, RESULTING FROM THE MANDATE CONTAINED IN SECTION 12-303 OF THE EDUCATIONAL SUPPLEMENT TO THE PHILADELPHIA HOME RULE CHARTER, SPECIFYING THAT PROPOSED EXPENDITURES IN THE ADOPTED BUDGET MAY NOT EXCEED FUNDS AVAILABLE FOR SCHOOL DISTRICT PURPOSES. THERE IS NO POSITION FOR YOU IN THE SCHOOL YEAR COMMENCING SEPT. 1, 1981 AND ENDING JUNE 30, 1982.

DEAR RUTH V. TAGGART

I DEEPLY REGRET TO NOTIFY YOU THAT YOUR EMPLOYMENT WITH THE SCHOOL DISTRICT OF PHILADELPHIA IS TERMINATED AS OF SEPTEMBER 1, 1981. THIS TERMINATION IS DUE TO THE CURTAILMENT AND/OR ALTERATION OF THE EDUCATIONAL PROGRAM, RESULTING FROM THE MANDATE CONTAINED IN SECTION 12-303 OF THE EDUCATIONAL SUPPLEMENT TO THE PHILADELPHIA HOME RULE CHARTER,

SPECIFYING THAT PROPOSED EXPEND-
ITURES IN THE ADOPTED BUDGET
MAY NOT EXCEED FUNDS AVAILABLE
FOR SCHOOL DISTRICT PURPOSES.

The claimants filed applications for unemployment compensation for the weeks following the receipt of these notices. The Office of Employment Security granted benefits and the school district appealed. The referee found that the claimants during the weeks in issue had no reasonable assurance of returning to work in the next academic year beginning September, 1981, and awarded benefits. Section 402.1(1) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802.1(1). The school district appealed again and the Unemployment Compensation Board affirmed, finding that the claimant had no reasonable assurance and no contract to perform services in the next academic year.

Section 402.1 describes the conditions under which persons who perform services for educational institutions may be eligible for unemployment compensation during the period between academic years or regular terms:

Benefits based on service for educational institutions pursuant to Article X, XI or XII shall as hereinafter provided be payable in the same amount, on the same terms and subject to the same conditions as outlined in Section 404(g); except that:

1. With respect to service performed after December 31, 1977, in an instructional research, or principal administrative capacity for an educational institution, benefits shall not be paid based on such services for any week

of unemployment commencing during the period between two successive academic years, or during a similar period between two regular terms whether or not successive or during a period of paid sabbatical leave provided for in the individual's contract, to any individual if such individual performs such services in the first of such academic years or terms and if there is a *contract or a reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second such academic years or terms.*

2. That with respect to services performed after December 31, 1977, in any other capacity for an educational institution (other than an institution of higher education as defined in Section 4 (m.2)), benefits shall not be paid on the basis of such services to any individual for any week which commences during a period between two successive academic years or terms if such individual performs such services in the first of such academic years or terms and there is a *reasonable assurance that such individual will perform such services in the second of such academic years or terms.* (Emphasis supplied.)

The school district agrees that the claimants had no reasonable assurance of performing services after September 1, 1981, but contends that they had a contract to perform services after that date, because the collective bargaining agreement was for two years.

This argument, of course, is completely counter to the notices sent to the claimants terminating their services or declaring that there "is no position for

532

you" in the school year commencing September 1, 1981, and that "your employment with the school district of Philadelphia is terminated as of September 1, 1981." The termination letters state the school district's position that there was no contract for the claimants' services for the next academic year. This position was vindicated by the courts. Surely the school district cannot sustain a position that there was a contract which, although not binding on the school district, nevertheless served to disqualify the claimants under Section 402.1.

The school district next contends that because the claimants received health, life and medical insurance benefits during July and August, 1981, they were not "unemployed" within the definition of that word in Section 4(u) of the Act, 43 P.S. §753(u) as the condition of an individual who performs no services for which remuneration is paid or payable and to whom no remuneration was paid or payable. The school district says that the fringe benefits were remuneration.

We think Section 4(u), the general definition of unemployment, does not apply to the between-academic year condition of employees. Section 402.1 specifically describes the circumstances under which school employees may be eligible for unemployment compensation between academic years and must prevail and is controlling. Section 1933 of the Pennsylvania Statutory Construction Act of 1972, 1 Pa. C. S. §1933.

Order affirmed.

ORDER

AND Now, this 23rd day of October, 1984, the order of the Unemployment Compensation Board of Review in the above-captioned matter is affirmed.